# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS; GREG ABBOTT, Governor of Texas; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; SIERRA CLUB,

*Petitioners*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, Acting Administrator of the United States Environmental Protection Agency,

*Respondents*

SIERRA CLUB; ENVIRONMENTAL DEFENSE FUND,

*Intervenors*

On Petitions for Review of a Final Action
of the United States Environmental Protection Agency

## TEXAS PETITIONERS' OPPOSED MOTION
## TO CONFIRM VENUE

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1896
Fax: (512) 370-9191

KYLE D. HAWKINS
Solicitor General
Kyle.Hawkins@oag.texas.gov

BILL DAVIS
Assistant Solicitor General

DAVID J. HACKER
Special Counsel for Civil Litigation

CRAIG J. PRITZLAFF
Assistant Attorney General

Counsel for Texas Petitioners

No. 18-60606

STATE OF TEXAS; GREG ABBOTT, GOVERNOR OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; SIERRA CLUB,

*Petitioners*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, ACTING ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents*

SIERRA CLUB; ENVIRONMENTAL DEFENSE FUND,

*Intervenors*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Texas Petitioners:**
State of Texas
Greg Abbott, Governor of Texas
Texas Commission on Environmental Quality

**Counsel for Texas Petitioners:**
Ken Paxton
Jeffrey C. Mateer
Scott A. Keller*
Kyle D. Hawkins (lead counsel)
Bill Davis

---

* In September 2018, Kyle D. Hawkins replaced Scott A. Keller as Solicitor General of Texas.

David J. Hacker
Craig J. Pritzlaff
Office of the Attorney General of Texas

**Additional Petitioner/Respondent-Intervenor:**
Sierra Club

**Counsel for Additional Petitioner/Respondent-Intervenor:**
Joshua D. Smith
Sierra Club
David Baake
Baake Law, LLC

**Respondent-Intervenor:**
Environmental Defense Fund

**Counsel for Respondent-Intervenor:**
Peter Zalzal
Rachel Fullmer
Environmental Defense Fund
Sean Donahue
Donahue, Goldberg & Weaver, LLP

**Respondents:**
United States Environmental Protection Agency ("EPA")
Andrew Wheeler, in his official capacity as Acting Administrator of the
    United States Environmental Protection Agency

**Counsel for Respondents:**
Amanda Shafer Berman
United States Department of Justice

/s/ Kyle D. Hawkins
Kyle D. Hawkins
Lead Counsel for Texas Petitioners

## TEXAS PETITIONERS' OPPOSED MOTION TO CONFIRM VENUE

In accordance with Federal Rule of Appellate Procedure 27, the State of Texas; Greg Abbott, Governor of Texas; and the Texas Commission on Environmental Quality (collectively, "the Texas Petitioners") respectfully ask this Court to confirm that venue for petitions for review of the final EPA action challenged here, Additional Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards—San Antonio, Texas Area, 83 Fed. Reg. 35136 (July 25, 2018) ("the Challenged Action," attached to Apps. 2, 3, 4, and 5) lies in this Court, rather than the United States Court of Appeals for the D.C. Circuit. The Sierra Club and the Environmental Defense Fund oppose this motion. EPA and Acting EPA Administrator Andrew Wheeler reserve their right to file a response to this motion.

### INTRODUCTION

The Challenged Action is the opposite of "nationally applicable." 42 U.S.C. § 7607(b)(1). It makes area designations under 42 U.S.C. § 7407(d) for just eight contiguous counties in the greater San Antonio area in Texas and is thus an unmistakable example of a "locally or regionally applicable" action. *Id.* Under the Clean Air Act's venue provision, it may be challenged only in this Court, not the D.C. Circuit. *Id.*; *Texas v. EPA*, 706 F. App'x 159, 164-65 (5th Cir. 2017) (unpublished); *Texas v. EPA*, 829 F.3d 405, 417-24 (5th Cir. 2016).

The exception to that rule does not apply here because the Challenged Action is not "based on a determination of nationwide scope or effect." 42 U.S.C. § 7607(b)(1). The "core determinations" in the action were "a number of intensely

factual determinations" "related to the particularities of the emissions sources in Texas[.]" *Texas v. EPA*, 829 F.3d at 419-21; *see Texas v. EPA*, 706 F. App'x at 165.

Despite this Court's clear guidance in the previous *Texas v. EPA* cases, petitioner/cross-respondent-intervenor Sierra Club has taken the position, and briefed that position in a reconsideration petition filed with EPA, that the Challenged Action is nationally applicable—or that, contrary to EPA's own view, the action is at least based on a determination of nationwide scope or effect. The Sierra Club therefore filed its primary petition for review of the Challenged Action in the D.C. Circuit, creating uncertainty about where this litigation should proceed.

The Texas Petitioners now ask this Court to confirm that venue lies here. The requested ruling would serve the important function of conserving the courts' and the parties' resources by preventing duplicative filings in two circuits. To that same end, the Texas Petitioners are filing a motion today in D.C. Circuit Nos. 18-1262 and 18-1263 asking that court to extend all filing deadlines in light of this Court's consideration of the venue issue presented in this motion. Because the petitioners' opening briefs in this case are due less than five weeks from now and this Court's precedent fully supports the relief sought in this motion, the Texas Petitioners respectfully request that the Court grant this motion without delay.

## Statutory Framework

The Clean Air Act ("CAA") establishes a cooperative federalism structure that divides authority between the federal government and the States. *Fla. Power & Light Co. v. Costle*, 650 F.2d 579, 581 (5th Cir. 1981). Under that structure, "air pollution

prevention . . . is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3).

One of EPA's responsibilities is to set National Ambient Air Quality Standards ("NAAQS"), which establish the permissible level of pollutants (including ozone, a gas that threatens public health and welfare when present in the lower atmosphere) in the ambient air. *Id.* § 7409(a)-(b). EPA reviews NAAQS every five years and makes necessary revisions. *Id.* § 7409(d).

Within one year after a NAAQS revision, each State may submit to EPA a list of designations for areas within its jurisdiction. *Id.* § 7407(d)(1)(A). There are three types of area designations: "attainment," "nonattainment," and "unclassifiable." *Id.* EPA evaluates a State's designations and, if it chooses to modify them, must issue a written explanation that describes why modification is "necessary" and provides notice to the State at least 120 days before EPA promulgates the modified designations. *Id.* § 7407(d)(1)(B).

A "nonattainment" designation by EPA triggers a statutory obligation on the part of a State to develop and submit to EPA a state implementation plan ("SIP") revision to demonstrate steps to be taken within the State to achieve attainment for the designated area. *Id.* §§ 7502, 7511(b).

### Factual and Procedural Background

### I. The 2015 Ozone NAAQS

In 2014, EPA published a proposal to revise the NAAQS for ozone. National Ambient Air Quality Standards for Ozone (proposed rule), 79 Fed. Reg. 75234 (Dec. 17, 2014). It finalized that action in 2015, replacing the preexisting NAAQS with a more

stringent NAAQS of 0.070 parts per million ("ppm") (or 70 parts per billion ("ppb")). National Ambient Air Quality Standards for Ozone (final rule), 80 Fed. Reg. 65292 (Oct. 26, 2015). Because the level of the NAAQS applies nationwide, petitions for review of that final action were filed in the D.C. Circuit, where they remain pending under lead case No. 15-1385.

## II. EPA's Area Designations for the 2015 Ozone NAAQS

EPA made area designations for the 2015 ozone NAAQS in three separate actions. The first two of those actions addressed areas in most of the States and reflected EPA's understanding that the actions were nationally applicable or based on determinations of national scope or effect within the meaning of section 7607(b)(1). By contrast, the third action—the one at issue here—addressed only eight Texas counties and contained no language suggesting either national applicability or national scope or effect.

### A. Round 1 Designations

In 2017, EPA promulgated "initial air quality designations for most areas in the United States, including most areas of Indian country, for the 2015 primary and secondary national ambient air quality standards (NAAQS) for ozone." Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards (NAAQS), 82 Fed. Reg. 54232, 54232 (Nov. 16, 2017). The action made designations for over 2,646 counties throughout the United States. *Id*. It was thus a nationally applicable final action, and EPA expressly found that the final designations it made were of nationwide scope and effect. *Id*. at 54234-35.

4

## B. Round 2 Designations

In June 2018, EPA promulgated designations for "all remaining areas [of the country], except for eight counties in the San Antonio, Texas metropolitan area." Additional Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards, 83 Fed. Reg. 25776, 25776 (June 4, 2018). These Round 2 designations affected areas in approximately half of the States. *Id*. at 25783-25847; *see Texas v. EPA*, 706 F. App'x at 161-62 (describing litigation about the timing of EPA's area designations for the 2010 sulfur-dioxide NAAQS similar to the litigation about the timing of the 2015 ozone NAAQS designations recounted in the Challenged Action, 83 Fed. Reg. at 35138). It is not surprising, then, that EPA included language in the Round 2 designations action stating that action's national applicability or nationwide scope and effect. 83 Fed. Reg. at 25783.

## C. San Antonio Area Designations—the Challenged Action

The Challenged Action was significantly narrower than the two earlier rounds of designations. Rather than applying to areas in a large number of States, it applied to just eight contiguous counties in Texas, a State comprised of 254 counties. 83 Fed. Reg. at 35136. Based on "the most recent 3 years of certified ozone air quality monitoring data (2015-2017) and on an evaluation of factors to assess contributions to nonattainment in nearby areas," the Challenged Action "designate[ed] Bexar County as the San Antonio, Texas nonattainment area and the remaining seven counties [in the greater San Antonio area] as attainment/unclassifiable areas." *Id*. at 35137.

The Challenged Action highlighted the focused nature of this final round of designations:

> On March 19, 2018, the EPA sent a 120-day letter to the Governor of Texas notifying the state of the EPA's preliminary response to the state's recommendations for the eight counties in the San Antonio-New Braunfels, Texas [Core Based Statistical Area]. The EPA requested that Texas submit by May 11, 2018, any additional information the state wanted the EPA to consider in making final designation decisions for the area. Although not required by section 107(d)(2)(B) of the CAA, the EPA also provided a 30-day public comment period specific to this area (83 FR 13719; March 30, 2018). The comment period closed on April 30, 2018.

*Id.* at 35138.

Unsurprisingly, the San Antonio area designations were based on Texas-specific data. *Id.* at 35138-39. The agency took comment only on the eight counties at issue. EPA Response to the Designation Recommendation From Texas for the San Antonio Area for the 2015 Ozone National Ambient Air Quality Standards: Notice of Availability and Public Comment Period, 83 Fed. Reg. 13719, 13719 (Mar. 30, 2018). It produced a technical support document specific to those counties. Texas: San Antonio Final Area Designations for the 2015 Ozone National Ambient Air Quality Standards Technical Support Document ("TSD") (App. 1). And unlike the previous two designation actions, the Challenged Action conspicuously omitted language of national applicability or nationwide scope or effect. *See* 83 Fed. Reg. at 35140.

## III. Procedural History of Petitions for Review of the Challenged Action

On August 28, 2018, the Texas Petitioners timely petitioned this Court for review of the Challenged Action. Texas Petitioners' Petition for Review, *Texas v. EPA*, No. 18-60606 (5th Cir. Aug. 28, 2018) (App. 2). That was the first petition for review

of the Challenged Action filed in any court, and this Court docketed it under case No. 18-60606. *See id.*

On September 21, 2018, the Sierra Club timely petitioned the D.C. Circuit for review of the Challenged Action, and that petition was docketed under D.C. Circuit case No. 18-1262. Sierra Club's Petition for Review, *Sierra Club v. EPA*, No. 18-1262 (D.C. Cir. Sept. 21, 2018) (App. 3). On September 24, 2018, the Sierra Club timely filed a protective petition for review of the Challenged Action in this Court, and this Court docketed that petition under case No. 18-60606 (the same number assigned to the Texas Petitioners' first-filed petition for review). Sierra Club's Petition for Review, *Texas v. EPA,* No. 18-60606 (5th Cir. Sept. 24, 2018) (App. 4).

Also on September 24, 2018, the Texas Petitioners timely filed a protective petition for review of the Challenged Action in the D.C. Circuit. Texas Petitioners' Protective Petition for Review, *Texas v. EPA*, No. 18-1263 (D.C. Cir. Sept. 24, 2018) (App. 5). That court docketed the Texas Petitioners' petition under case No. 18-1263 and quickly consolidated it with No. 18-1262 (the Sierra Club's petition for review) on the court's own motion. Order, *Sierra Club v. EPA*, No. 18-1262 (D.C. Cir. Sept. 25, 2018) (App. 6). The D.C. Circuit further ordered the parties in No. 18-1262 to file several documents by specified dates and the Texas Petitioners to file two documents in No. 18-1263 by October 25, 2018. Order, *Sierra Club v. EPA*, No. 18-1262 (D.C. Cir. Sept. 24, 2018) (App. 7); App. 6.

On September 27, 2018, the Sierra Club and the Environmental Defense Fund timely moved to intervene in support of EPA in the portion of Fifth Circuit No. 18-60606 involving the Texas Petitioners' petition for review of EPA's Bexar County

nonattainment designation. Motion for Leave to Intervene by Sierra Club and Environmental Defense Fund, *Texas v. EPA*, No. 18-60606 (5th Cir. Sept. 27, 2018) (App. 8). On October 9, 2018, EPA filed the certified index to the administrative record for the Challenged Action in this Court. Certified Index of Documents Comprising the Record, *Texas v. EPA*, No. 18-60606 (5th Cir. Oct. 9, 2018) (App. 9).

Also on October 9, 2018, this Court issued a briefing notice in No. 18-60606, making the petitioners' opening briefs on the merits due November 19, 2018. Letter from Court to Counsel, *Texas v. EPA*, No. 18-60606 (5th Cir. Oct. 9, 2018) (App. 10). On October 15, 2018, the Court granted the Sierra Club and the Environmental Defense Fund's motion to intervene. Order, *Texas v. EPA*, No. 18-60606 (5th Cir. Oct. 15, 2018) (App. 11).

Additionally, the Texas Petitioners intend to file a motion for leave to intervene in support of EPA in the portion of No. 18-60606 involving the Sierra Club's petition for review of EPA's attainment/unclassifiable designation of the seven counties surrounding Bexar County. Under Federal Rule of Appellate Procedure 15(d) and Fifth Circuit Rule 15.5, that motion is due October 24, 2018 (30 days after the Sierra Club filed its petition for review in this Court, App. 4).

## STANDARD OF REVIEW

This Court decides venue under 42 U.S.C. § 7607(b)(1) de novo. *Texas*, 829 F.3d at 421. The Court's "independent assessment" encompasses both the "applicability" of the final action (i.e., whether it is "nationally applicable" or "locally or regionally applicable") and the scope of the "the core determinations in the action" (i.e., whether they are "of nationwide scope and effect"). *Id*. at 419-21.

Under this Court's precedent, the Challenged Action is a "locally or regionally applicable" final action that is not based on a determination of "nationwide scope or effect." 42 U.S.C. § 7607(b)(1). The Court should conclude that venue is therefore proper only in this Court, not in the D.C. Circuit.

## I. EPA's Texas-Only Final Action and its Prior Multi-State Final Actions Are Not the Same Action.

As this Court explained two years ago, "[i]nterpreting [section 7607(b)(1)] requires close attention to detail," which "begin[s] by defining the significant statutory terms." *Texas v. EPA*, 829 F.3d at 419. Chief among those terms, and the starting point for determining proper venue, is the agency "action" at issue. "The 'action' is the rule or other final action taken by the agency that the petitioner seeks to prevent or overturn." *Id.*

Here, that "action" is EPA's final rule published in the Federal Register on July 25, 2018—Additional Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards—San Antonio, Texas Area, 83 Fed. Reg. 35136 (July 25, 2018)—and only that rule. *See* App. 2 at 1, App. 3 at 1, App. 4 at 1; App. 5 at 1 (petitions for review challenging this singular "final action" or "final rule"). The Challenged action "establish[es] initial air quality designations for the eight counties in the San Antonio-New Braunfels, Texas Core Based Statistical Area (CBSA) for the 2015 primary and secondary national ambient air quality standards (NAAQS) for ozone." 83 Fed. Reg. at 35136. It does not establish any designations for any areas outside of Texas. The question for this Court is whether the Challenged Action is:

(1) a nationally applicable action; (2) a locally or regionally applicable action; or (3) a locally or regionally applicable action based on a determination that has nationwide scope or effect. *Texas*, 829 F.3d at 418.

In its petition for administrative reconsideration of the Challenged Action, the Sierra Club asserted that the action at issue comprises *both* EPA's July 2018 final rule addressing only these eight counties in Texas *and* the previous two 2015 ozone NAAQS designation actions (which addressed areas throughout the country, excluding the eight Texas counties addressed in the Challenged Action). Sierra Club's Petition for Reconsideration of Additional Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards—San Antonio, Texas at 2, 8-18 (Sept. 22, 2018) (App. 12). The Sierra Club's position rests on the premise that the distinct final rules are, in fact, the same EPA final action for purposes of determining venue. *See id.* at 9 (asserting that the Challenged Action is, "on [its] face, part-and-parcel of one overall 'nationally applicable' regulatory rulemaking").

That is a false premise. For purposes of determining venue under section 7607(b)(1), "[t]he 'action' is the rule or other final action taken by the agency that the petitioner seeks to prevent or overturn." *Texas*, 829 F.3d at 419. The Texas Petitioners have not challenged EPA's earlier 2015 ozone NAAQS designation actions. Two of the Texas Petitioners intervened in support of EPA in the proceedings involving the Round 2 designations. Motion of the State of Texas and the Texas Commission on Environmental Quality for Leave to Intervene as Respondents, *Clean Wisconsin v. EPA*, No. 18-1203 (lead) (D.C. Cir. Aug. 30, 2018) (App. 13); Order Granting Motions to Intervene, *Clean Wisconsin v. EPA*, No. 18-1203 (lead) (D.C.

Cir. Oct. 1, 2018) (App. 14). Those proceedings are pending in the D.C. Circuit based on the nature of the Round 2 designations. *See supra* p. 5. In the *Texas v. EPA* case decided last year, this Court flatly rejected an effort to conflate an earlier area-designation action with the action before the Court. 706 F. App'x at 164. That same reasoning applies with equal force here.

The Sierra Club argues that "all of the 2015 ozone designations were part of the same proposed rulemaking, and relied on the same core administrative record, the same statutory and regulatory interpretations, and the same nationally-applicable Designation Guidance." App. 12 at 8. But those considerations (to the extent they are even relevant under section 7607(b)(1)) did not lead this Court in either of the two prior *Texas v. EPA* cases to conclude that venue lay in the D.C. Circuit. As in those two earlier cases, the dispositive point is what the Challenged Action itself reflects: that the designations for these eight contiguous Texas counties are based on air-quality considerations specific to that small portion of the State. 83 Fed. Reg. at 35137-39.

EPA's separate technical support document for the Challenged Action confirms this point. It provides the data that EPA deemed relevant for the eight counties in the greater San Antonio area. App. 1 at 6-22. And EPA separately responded to public comments it received on the designations for these eight Texas counties in a stand-alone document. Responses to Significant Comments on Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards for the San Antonio, Texas Area (July 2018) (App. 15). The record in the D.C. Circuit challenge to the previous designation action does not include these documents specific to the

Challenged Action. *Compare* Certified Index of Documents Comprising the Record, *Clean Wisconsin v. EPA*, No. 18-1203 (lead) (D.C. Cir. Sept. 28, 2018) (App. 16) (D.C. Circuit index listing only 420 documents) *with* App. 9 (Fifth Circuit index listing additional documents, including the Challenged Action and supporting documents that do not appear in the D.C. Circuit index).

To the extent the Sierra Club argues that the actions are based on the same legal interpretation of section 7407(d)'s requirements, *e.g.*, App. 12 at 9, it proves too much. Surely, EPA applies the same legal interpretation of key provisions of the statute in determining all of its final designations for all covered pollutants—not just for these particular designations for the 2015 ozone NAAQS. It would be arbitrary and capricious to take a different approach. *See, e.g.*, *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (stating that "[u]nexplained inconsistency" of the application of a statute is a reason for finding that application "to be an arbitrary and capricious change"). The fact that EPA applied the same legal standards to take different discrete actions does not mandate review in the D.C. Circuit.

Indeed, in *United States Steel Corp. v. EPA*, 595 F.2d 207 (5th Cir. 1979), this Court decided challenges to nonattainment designations for areas located exclusively within the circuit, even though the designations were published in a rule that covered areas outside of the circuit and even though that final rule included "EPA's position on certain general issues raised in comments on the original designations of areas in these or other States." 43 Fed. Reg. 40,412 (Sept. 11, 1978); *see also Western Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 807 (9th Cir. 1980) (holding that a rule promulgating

nonattainment designations for areas in a single EPA region "appl[ied] locally, not nationally" and thus was properly reviewed in the Ninth Circuit, not the D.C. Circuit).

In short, EPA issued a single final rule promulgating area designations for eight Texas counties based on facts and analysis for each area contained in stand-alone supporting documents applicable to those areas only. It is that action, and not any other action, that the Court should consider in deciding the venue question.

## II. EPA's Texas-Only Final Action is Locally or Regionally Applicable, Not Nationally Applicable.

EPA's Texas-only final action is a locally or regionally applicable action, not a nationally applicable action. In this Circuit, "[t]he question of applicability turns on the legal impact of the action as a whole." *Texas v. EPA*, 829 F.3d at 419; *accord Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *2 (5th Cir. Feb. 24, 2011) (unpublished) (explaining that "[d]etermining whether an action by the EPA is regional or local on the one hand or national on the other should depend on the location of the persons or enterprises that the action regulates rather than on where the effects of the action are felt" (quotation mark omitted)).

The legal impact of the Challenged Action is exclusively in Texas. EPA's final action triggers a statutory obligation and deadline on the State of Texas, and only the State of Texas, to develop and submit to EPA a SIP revision for the new Bexar County nonattainment area. 42 U.S.C. §§ 7502, 7511(b). That legal obligation and statutory deadline are unique to Texas.

The Sierra Club fails to identify any legal impact of the final rule that extends beyond the State of Texas, much less nationally. And although the Sierra Club attempts to distinguish this Court's 2016 and 2017 decisions in *Texas v. EPA*, App. 12 at 16-17, its primary reliance on case law from other circuits reflects the failure of its argument under this Court's precedent. That is presumably why EPA, which unsuccessfully sought a D.C. Circuit venue in both previous *Texas v. EPA* cases, appropriately declined to include language regarding national applicability or national scope or effect in the Challenge Action and has not sought transfer of this case to the D.C. Circuit, even though Texas filed its petition for review more than seven weeks ago. *See* App. 2.

One case on which the Sierra Club does rely is the Tenth Circuit's decision in *ATK Launch Systems, Inc. v. EPA*, 651 F.3d 1194 (10th Cir. 2011). App. 12 at 15. But even that out-of-circuit decision does not support a D.C. Circuit venue here. The Tenth Circuit in *ATK Launch* confirmed that the "court must analyze whether the regulation itself is nationally applicable" by "looking at [the] face of [the] rule." 651 F.3d at 1197 (citing *Natural Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988)); *accord Texas v. EPA*, 706 F. App'x at 163. And in that case, the face of the rule applied to "every state and territory." *ATK Launch*, 651 F.3d at 1198. In contrast, the face of the Challenged Action applies only to eight Texas counties. 83 Fed. Reg. at 35136. And "when a final rule, by its terms, regulates only people or entities in a single judicial district, the action is not nationally applicable." *Texas v. EPA*, 706 F. App'x at 163 (citing *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881

(D.C. Cir. 2015), and stating (at 164) that the Court was "not aware of any case holding that a rule that on its face regulates entities and conduct in a single state is nationally applicable").

Moreover, the Texas Petitioners are not attempting to "frame[] [their] challenge" to "nationally applicable regulations" based on the regulations' "practical effect" in only one State, as the court found in *ATK Launch*. 651 F.3d at 1197, 1199. Here, the entire rule is justified by data specific to the Texas counties at issue, applies only to Texas, and has an impact only in Texas. By contrast, the cases the Sierra Club relies on involved challenges to EPA actions that made designations for areas across the country. *See, e.g.*, App. 12 at 16 (citing several such cases).

## III. The Core Determinations in EPA's Texas-Only Final Action Are Not of Nationwide Scope or Effect, and EPA Did Not Find Otherwise.

EPA's Texas-only final action is also not based on a determination that has nationwide scope or effect, and EPA included no finding of nationwide scope or effect in the Challenged Action. To apply the "nationwide scope or effect" "exception" to the "default presumption" of review in this Court, the Court "must answer two questions: (1) is the action based on a determination that has nationwide scope or effect; and (2) did the Administrator publish an adequate finding?" *Texas*, 829 F.3d at 419-20. Here, the answer to each question is "no." But even if EPA were to grant the Sierra Club's reconsideration petition and satisfy the second element of this inquiry, failure to satisfy the first would be dispositive. *See* 42 U.S.C. § 7607(b)(1) (separating the two conditions with an "and").

15

In *Texas v. EPA* (2016), this Court explained what is material to this analysis: "Section 7607(b)(1) . . . looks to the 'determination' that the challenged action is 'based on.' These determinations are the justifications the agency gives for the action and they can be found in the agency's explanation of its action. They are the reason the agency takes the action that it does." 829 F.3d at 419. "[T]he relevant determinations are those that lie at the core of the agency action. Merely peripheral or extraneous determinations are not relevant—the agency should identify the core determinations in the action." *Id.*

Here, in the action itself, EPA clearly identified the "core determinations" upon which its designations for the four Texas areas were based—and they are not, in any way, "of nationwide scope or effect." *Id.* Those determinations are instead based on data specific to the San Antonio region of Texas. 83 Fed. Reg. at 35137-39; *see* App. 1 at 6-22.

This is exactly the type of "intensely factual determination[]" that, under this Court's precedent, does not have nationwide scope or effect. *Texas*, 829 F.3d at 421. Just as in the Texas regional haze case, "[t]hese determinations all related to the particularities of the emission sources in Texas" and their alleged impact on air quality in Texas. *Id.* Indeed, the reasons for denying EPA's motion are even stronger here than in the prior case, where EPA alleged impacts in neighboring Oklahoma. *See id.*; *cf.* App. 1 at 6-18.

The Sierra Club argues that all of the 2015 ozone designations were based on EPA's interpretation of the same language in section 7407(d)(1). *E.g.*, App. 12 at 11. But if an EPA action were considered "based on a determination of nationwide scope

16

or effect," 42 U.S.C. § 7607(b)(1), every time EPA applied a statutory term to a particular set of facts, then every Clean Air Act case could be litigated only in the D.C. Circuit. If consistency and uniformity (which are baseline requirements for lawful agency action) were the litmus test for venue, then the "exception" in the relevant portion of section 7607(b)(1) would swallow the rule. The Court should not accept the absurd result of the Sierra Club's position. *See Atchison v. Collins*, 288 F.3d 177, 181 (5th Cir. 2002) (per curiam) (affirming the "common mandate of statutory construction to avoid absurd results").

## Conclusion

The Court should confirm that venue for petitions for review of the Challenged Action lies only in this Court, not in the D.C. Circuit, allowing merits briefing in this Court to proceed on schedule.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1896
Fax: (512) 370-9191

/s/ Kyle D. Hawkins
KYLE D. HAWKINS
Solicitor General
Kyle.Hawkins@oag.texas.gov

BILL DAVIS
Assistant Solicitor General
Bill.Davis@oag.texas.gov

DAVID J. HACKER
Special Counsel for Civil Litigation
David.Hacker@oag.texas.gov

CRAIG J. PRITZLAFF
Assistant Attorney General
Craig.Pritzlaff@oag.texas.gov

Counsel for Texas Petitioners

## Certificate of Conference

On October 16, 2018, counsel for the State Petitioners contacted all other counsel regarding this motion. The Sierra Club and the Environmental Defense Fund oppose this motion. EPA and its acting administrator reserve their right to respond.

/s/ Kyle D. Hawkins
KYLE D. HAWKINS

## Certificate of Service

On October 17, 2018, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kyle D. Hawkins
KYLE D. HAWKINS

## Certificate of Compliance

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,578 words, excluding the parts of the motion exempted by Rules 27(a)(2)(B) and 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kyle D. Hawkins
KYLE D. HAWKINS